John H. Reichman (JR 2154)
Meagan A. Zapotocky (MZ 8505)
WACHTEL & MASYR, LLP
110 East 59th Street
New York, New York 10022
(212) 909-9500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SHARAGANO HOLDINGS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JMB APPAREL DESIGNER GROUP, INC., <br><br> Defendant. | Civ. Action No. |

**PLAINTIFF'S MEMORANDUM OF LAW
IN SUPPORT OF ITS APPLICATION
FOR A PRELIMINARY INJUNCTION**

**INTRODUCTION**

Plaintiff, Sharagano Holdings, Inc. ("Sharagano") by and through its attorneys, Wachtel & Masyr, LLP, respectfully moves this Court for a preliminary injunction enjoining Defendant JMB Apparel Designer Group, Inc. ("JMB") from using Plaintiff's SHARAGANO trademark (the "Trademark"). JMB was the prior licensee of the SHARAGANO Trademark in connection with women's suits. JMB's rights were terminated in 2006, and since that time, Plaintiff has had all rights to use the Trademark. Defendant has continued to use the Trademark in connection with its apparel bearing the name "SHARAGANO ATELIER." Absent such preliminary relief, Sharagano will suffer immediate and irreparable harm to his highly valuable and rigorously

protected intellectual property. Defendant's acts constitute an infringement of the rights guaranteed under the Trademark Act of 1946, as amended (15 U.S.C. § 1114, et seq.), and the Lanham Act (15 U.S.C. § 1125, et seq.), as well as a violation of Plaintiff's rights under New York State law.

## STATEMENT OF FACTS

Plaintiff Sharagano is a New York Corporation. Sharagano is a designer, importer and wholesaler of contemporary wearing apparel. (Complaint ¶ 9). Defendant JMB Apparel Designer Group Inc. is a New York corporation with its principal place of business located at 214 West 39th Street, New York, New York. JMB is a manufacturer and/or designer and/or distributor of wearing apparel. (Complaint ¶ 11). Both Plaintiff's and Defendant's wearing apparel is available for sale at retail stores, including department stores, throughout the United States. (Complaint ¶¶ 9, 11).

The SHARAGANO Trademark is a valid United States Trademark, Registration No. 2727098, for the mark used in connection with wearing apparel. (Complaint ¶ 10). "SHARAGANO" has been a registered trademark since June 17, 2003 (the "Trademark"). Since that time, the Trademark has continuously been used in commerce. (Complaint ¶ 10). Sharagano holds title and interest in and to the SHARAGANO Trademark as of August 31, 2006. Id.

Sa-al Universal, LLC ("Sa-al"), Plaintiff's predecessor in interest, was the registrant of the SHARAGANO Trademark. (Complaint ¶ 12). On or about April 1, 2004, Sa-al granted to JMB a license to use the Trademark in connection with ladies' suits to certain retail stores (the "License Agreement"). (Complaint ¶ 13). Pursuant to the terms of the License Agreement, upon

its termination, JMB was to immediately discontinue use of the Trademark, and was not to resume the use thereof, or adopt any mark confusingly similar to the Trademark.

In April 2004, PJDYH, LLC purchased the Trademark from Sa-al. (Complaint ¶ 14). Approximately two years later, by letter dated February 8, 2006, JMB notified PJDYH, LLC, that it was terminating the License Agreement for the Trademark, thereby extinguishing all its rights and interests in the Trademark, effective August 9, 2006. (Complaint ¶ 15).

Plaintiff Sharagano was founded in August 2006 for purposes of acquiring the Trademark and selling all apparel products, including without limitation ladies' suits, under the Trademark. On or about August 31, 2006, Plaintiff acquired from PJDYH, LLC all rights, title and interest the Trademark. (Complaint ¶ 16). The SHARAGANO Trademark is distinctive and has become a symbol of quality throughout the region. (Complaint ¶ 24). Indeed, Plaintiff and its predecessors have spent substantial amounts of money to acquire the Trademark and on advertising and promotion of its wearing apparel, available in retail stores and on the Internet, in print ads, and through direct marketing to develop the goodwill in its SHARAGANO Trademark. (Complaint ¶ 25).

In June 2007, Sharagano discovered that JMB was selling products at Filene's Basement and Lord & Taylor bearing the label "SHARAGANO ATELIER." (Complaint ¶ 17). At that time, Sharagano also discovered that Nordstrom believed it was carrying SHARAGANO apparel when, in fact, Nordstrom was carrying JMB's apparel. (Complaint ¶ 18). Apparel bearing the label and name SHARAGANO ATELIER are also readily available over the Internet. As of June 2007, a search on www.google.com for "Sharagano Atelier" results in 346 "hits," and identifies retailers from which consumers may purchase SHARAGANO ATELIER apparel. (Complaint ¶ 18). Both Plaintiff's and Defendant's apparel is offered side-by-side to consumers

on the Internet, which inevitably leads to consumer confusion as to the source of the apparel. (Id.). In addition, numerous websites on the Internet currently advertise JMB's clothing as SHARAGANO ATELIER. (Complaint ¶ 19).

By letter dated June 5, 2007, Sharagano demanded that JMB cease and desist from advertising, marketing, manufacturing offering to sell and selling and distributing products under the SHARAGANO Trademark. (Complaint ¶ 21). By letter dated June 12, 2007, Defendant JMB denied using the Trademark in connection with its line of clothing bearing "Atelier" garments. JMB insists the "Sharagano" name on the "Altelier" hangtags or garments refers to a factory in Shanghai at which the garments were manufactured. (Complaint ¶ 22). However, the hangtags attached to JMB's garments include the word "Sharagano," and are currently being offered to consumers at certain in-store and on-line retailers. (Complaint ¶ 23).

Despite the fact that Defendant has admitted that it has no license to use the Trademark and that its license extinguished in August, 2006, JMB is knowingly and willfully using the Trademark in connection with its SHARAGANO ATELIER apparel. JMB's infringement of the Plaintiff's Trademark is wrongful and willful and has caused, and will likely continue to cause, the Plaintiff to suffer substantial and irreparable damage and injury to its reputation and business. JMB's actions were and are deliberate and actionable in derogation of Plaintiff's intellectual property rights as alleged in the Complaint. (Complaint ¶ 26).

## ARGUMENT

### I. PLAINTIFF IS ENTITLED TO A PRELIMINARY INJUNCTION

Plaintiff seeks a preliminary injunction, pursuant to Rule 65 of the Federal Rules of Civil Procedure, enjoining and restraining Defendant from using the Trademark. The Lanham Trademark Act gives the Court the "power to grant injunctions, according to the principles of

equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a).

A.   **Legal Standard**

In order to obtain a preliminary injunction, a party must "establish irreparable harm and either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in is favor." Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002); see also Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005). Plaintiff easily meets this standard here.

B.   **Plaintiff Will Suffer Irreparable Injury Unless the Court Enjoins Defendant From Using In Commerce Plaintiff's Trademark**

To satisfy the irreparable injury requirement, a party must demonstrate that absent a preliminary injunction, it will suffer "an injury that is neither remote nor speculative, but actual and imminent." Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 114 (2d Cir. 2005). In the licensing context, when "unlawful use and consumer confusion have been demonstrated, a finding of irreparable harm is automatic." Church of Scientology Intern. V. Elmira Mission of the Church of Scientology, 794 F.2d 38, 41-42 (2d Cir. 1986). The need to issue a preliminary injunction where a former licensee continues to use a trademark after its license to do so has been revoked is compelling because of the danger that consumers will be confused and believe that the former licensee is still an authorized representative of the trademark holder. Id.

In a trademark infringement case, proof of likelihood of consumer confusion establishes both a likelihood of success on the merits and irreparable harm. Brennan's Inc. v. Brennan's Restaurant, L.L.C., 360 F.3d 125, 129 (2d Cir. 2004); Cartier v. Symbolix, Inc., 386 F.Supp.2d 354, 358 (S.D.N.Y. 2005).

5

In order to evaluate the likelihood of confusion, Courts apply the multi-factor test set forth in Polaroid Corp. v. Polarad Elecs. Corp., 287 F.2d 492, 495 (2d Cir. 1961). This test requires analysis of several non-exclusive factors, including: (1) the strength of the mark, (2) the degree of similarity between the two marks, (3) the competitive proximity of the two marks, (4) actual confusion, (5) the likelihood the plaintiff will bridge the gap, (6) the defendant's good faith in adopting the mark, (7) the quality of the defendant's products, and (8) the sophistication of the purchasers. Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 116 (2d Cir. 2006); see also Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 256 (2d Cir. 1987).

In the present case, an analysis of the Polariod factors makes clear that the likelihood of confusion is strong. With respect to the first Polaroid factor, the "strength of the mark" means its "tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." Diner, Inc. v. Dream Kitchen, Inc., No. 95 Civ. 4130, 1995 WL 438627, at *3 (S.D.N.Y. July 24, 1995). The strength of the mark is sometimes referred to as its distinctiveness. Id. A plaintiff must demonstrate distinctiveness in the "relevant" market, for if the mark is not recognized by the relevant consumer group, a similar mark will not deceive that consumer. Dawn Donut Co. v. Hart's Food Stores, Inc., 267 F.2d 358, 364 (2d Cir. 1959).

Here, the Plaintiff's Trademark is highly distinctive in the "relevant" market, the apparel industry. As set forth above, the SHARAGANO Trademark has become a symbol of quality throughout the region, and the Trademark has been in continuous use in commerce since 2003. (Complaint 24, 10). Apparel offered under the "SHARAGANO" Trademark has achieved substantial market success. The Trademark and has been widely promoted, and apparel under the Trademark has been widely distributed in the United States. (Complaint ¶ 44). In addition, Sharagano and its predecessors have spent substantial amounts to acquire the Trademark and on

advertising and promotion of its clothing lines in print ads, and through direct-marketing to develop good will in its SHARAGANO Trademark. (Complaint ¶ 25).

With regard to the second Polaroid factor, the degree of similarity between the marks, each mark must be compared against the other as a whole. See Universal City Studios, Inc. v. Nintendo Co., 746 F.2d 112, 117 (2d Cir. 1984). The dispositive question is whether such similarity is more likely than not to cause consumer confusion. Brennan's Inc. v. Brennan's Restaurant, L.L.C., 360 F.3d 125, 133 (2d Cir. 2004).

Here, consumer confusion is inevitable because Defendant's use of SHARAGANO ATELIER on its apparel and hangtags is virtually identical to Plaintiff's SHARAGANO Trademark.

With regard to the third Polaroid factor, a court will consider whether the two competing marks are in the same competitive proximity. Mobil Oil Corp. v. Pegasus Petroleum Corp., 818 F.2d 254, 256 (2d Cir. 1961). The competitive proximity factor has two elements, market proximity and geographic proximity. Brennan's, 360 F.3d at 134. In the instant action, both parties use the SHARAGANO Trademark in competition in the wearing apparel retail industry and in connection with the advertising, marketing and offering of its goods to in-store and Internet retailers. (Complaint ¶¶ 8, 10, 33). As such, the parties use the marks are in the same competitive proximity.

The fourth Polaroid factor is "the existence of actual confusion." Mobil Oil, 818 F.2d at 256. As set forth in Plaintiff's affidavit, Plaintiff has approached at least one major retailer who was confused as to the affiliation of the Trademark to the parties. (Lomita Aff. ¶ 11). The Complaint and Plaintiff's affidavit also set forth numerous instances of advertisements on the Internet identifying Defendant's apparel as SHARAGANO ATELIER, and also displaying for

sale SHARAGANO apparel on the same "web page" as SHARAGANO ATELIER, which demonstrates retailers' confusion of the Trademark and the source of the apparel. (Complaint, Exhs. D-F; Lomita Aff. ¶¶ 11-13). Defendant is in effect holding itself out as an authorized licensee of the Trademark, which it admits it is not. (See Complaint, Exh. H). Such acts will erode the goodwill associated with the SHARAGANO Trademark. As a result, Plaintiff is being irreparably harmed by defendant's acts.

The fifth Polaroid factor, "the likelihood the plaintiff will 'bridge the gap' between the two markets, concerns the likelihood that the plaintiff will enter the Defendants' market." Mobil Oil, 818 F.2d at 256. In the instant action, Plaintiff and Defendant operate their businesses in the same District and both advertise, market and offer wearing apparel. Since the parties exist in the same market, the Plaintiff is not required to "bridge the gap" between different markets.

With regard to the sixth Polaroid factor, the defendant's good faith in adopting the mark, considers "whether the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the senior user's product." W.W.W. Pharmaceutical Co., Inc., Gilette Co., 984 F.2d 567, 575 (2d Cir. 1993). Here, Defendant's bad faith use of the Trademark is obvious and clear. In response to Plaintiff's letter demanding that Defendant cease and desist using the Trademark, Defendant claimed to not be using the Trademark, asserting that the word it used, beginning with "sh" referred to a factory in Shanghai. (Complaint, Exh. H). Defendant takes this position, despite the numerous instances of its own products' hangtags and on advertisements on the Internet identifying its apparel as SHARAGANO ATELIER. Defendant also admits that it does not have a license to use the Trademark (since August 2006), but there is documentary evidence that Defendant is, in fact,

8

using the SHARAGANO Trademark in commerce. (Complaint, Exhs. D-F). Defendant's acts demonstrate its bad faith in adopting the SHARAGANO Trademark.

With respect to the seventh Polaroid factor, the quality of the defendant's product, a court "generally considers whether the senior user's reputation could be tarnished by the inferior merchandise of the junior user." Cadbury Beverages, Inc. v. Cott Corp., 73 F.3d 474, 483 (2d Cir. 1996). In the present case, Plaintiff's reputation and business was tarnished by the Defendants' use of its Trademark. This is evidenced by the fact that retailers, including Nordstrom, declined to carry Plaintiff's new apparel in its store because it believed it was already carrying apparel bearing the SHARAGANO Trademark, when in fact the source of said apparel was JMB. (Lomita Aff. ¶ 11). Sharagano has no control over the quality of the goods offered by Defendant under the name SHARAGANO ATELIER, and unless Defendant is restrained by the Court, Defendant's unfair practices will continue to cause irreparable injury to Sharagano.

The final Polaroid factor is the "sophistication of the consumer," Mobil Oil, 818 F.2d at 256. In the present case, the sophistication of the consumer is relatively low. A consumer would likely not be able to distinguish between the parties' products when the parties' apparel is displayed side by side. This is especially true where advertisements for SHARAGANO ATELIER apparel is available on the Internet for sale directly next to advertisements for SHARAGANO apparel. (See Complaint, Exhs. E, F)

Each of the Polaroid factors demonstrates that consumers are actually confused and will likely continue to be confused by Defendant's use of the Trademark in connection with its SHARAGANO ATELIER apparel in a substantially similar market. Since Plaintiff has demonstrated consumer confusion, it has established likelihood of success on the merits and

irreparable harm, thereby warranting preliminary injunctive relief. See Brennan's, 360 F.3d at 129.

Therefore, a preliminary injunction enjoining and restraining Defendant from using the SHARAGANO Trademark, SHARAGANO ATELIER, or anything confusingly similar thereto, on or in connection with the advertising, marketing and offering of its goods and related services.

### C.  Plaintiff Is Likely to Succeed on the Merits of Its Claims

#### 1.  Trademark Infringement and False Designation of Origin

In order to prevail on its trademark infringement claim under 15 U.S.C. § 1114(1)(a) and its claims of false designation of origin under 15 U.S.C. § 1125(a), a plaintiff must establish (1) that it has a valid trademark entitled to protection under the Act, and (2) defendant's actions are likely to cause confusion. Arrow Fastener v. Stanley Works, 59 F.3d 384, 390 (2d Cir. 1995).

A certificate of registration with the Patent and Trademark Office is prima facie evidence that a trademark is valid and entitled to protection. Lane Capital Mgmt., Inc. v. Lane Capital Management Inc., 193 F.3d 337, 345 (2d Cir. 1999); see also 15 U.S.C. § 1115(a). Plaintiff's SHARAGANO Trademark, registration number 2727098, is valid. (Complaint ¶ 10). Accordingly, Plaintiff has demonstrated by documentary evidence that it is the owner of a valid trademark entitled to protection. (Complaint ¶ 10, Exh. A).

For the reasons set forth in detail above, Plaintiff is likely to succeed on the merits of its trademark infringement and false designations of origin claims because it has demonstrated that Defendant's activities are likely to cause confusion.[1]

---

[1] Plaintiff is likely to succeed on the merits of its state law infringement claim for the same reasons as set forth in this section. See Louis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108 (2d Cir. 2006) ("We analyze claims under New York's unfair competition statute in a similar fashion to how we analyze claims under the Lanham Act").

10

## 2. **Dilution**

To establish a trademark dilution claim, a plaintiff must show that "(1) its mark is famous; (2) the defendant is making commercial use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark dilutes the quality of the mark by diminishing the capacity of the mark to identify and distinguish goods and services." Savin Corp. v. Savin Group, 391 F.3d 439, 448-49 (2d Cir. 2004).[2]

Here, Plaintiff's SHARAGANO Trademark is a famous mark. The SHARAGANO Trademark is distinctive and has become a symbol of quality throughout the region. (Lomita Aff. ¶ 18). Apparel offered under the SHARAGANO Trademark has achieved substantial market success. (Lomita Aff. ¶ 25). Plaintiff and its predecessors in interest have extensively promoted the Trademark and have widely distributed apparel under the Trademark in the United States. (Id.). Apparel bearing the Trademark is distinctive. (Lomita Aff. ¶ 18).

Plaintiff has discovered Defendant's commercial use of the SHARAGANO mark in retail stores and on the Internet in connection with Defendant's SHARAGANO ATELIER line of apparel. (Complaint, Exhs. D-F). Plaintiff discovered Defendant's use of the Trademark in about June 2007, after the Trademark became famous. (Lomita Aff. ¶ 11). Defendant's use of the Trademark dilutes the quality of the Trademark to Plaintiff by, among other things, diminishing the capacity of the mark to identify and distinguish goods and services. (Complaint ¶ 50). Accordingly, Plaintiff is likely to succeed on the merits of its dilution claim.

---

[2] A dilution claim under New York law is less stringent than a claim under the Federal Trademark Dilution Act. Federal dilution claim requires a showing of actual dilution, whereas a state law claim of dilution shows a mere "likelihood of dilution." Savin, 391 F.3d at 458; Louis Vuitton, 454 F.3d at 119.

### D.  The Balance of the Equities Tips Decidedly In Plaintiff's Favor

Inasmuch as Plaintiff has demonstrated a likelihood of success on the merits and has established that it will suffer irreparable harm if Defendant continues to use, without permission, Plaintiff's Trademark, and further because Defendants have willfully engaged in the conduct described herein, the balancing of the equities tips sharply in Plaintiff's favor.

It is undisputed that Defendant previously had a license to use the SHARAGANO Trademark in connection with ladies' suits. Defendant, however, terminated all its rights to use the Trademark in connection with its apparel business. Defendant denies that the Trademark is used by Defendant in connection with apparel incorporates the SHARAGANO Trademark while numerous retailers on the Internet nevertheless advertise such products as SHARAGANO products. Defendant intentionally and willfully resumed use of the Trademark in connection with its apparel bearing the labels and hangtags SHARAGANO ATELIER. The injury caused to Plaintiff as a result of Defendant's willful misconduct and use of Plaintiff's Trademark warrant the preliminary relief sought herein.

### CONCLUSION

For the reasons set forth above Plaintiff respectfully requests that the Court grant its motion for a preliminary injunction in its entirety.

Dated: New York, New York
July 5, 2007

WACHTEL & MASYR, LLP

By: /s/ Meagan Zapotocky
John H. Reichman (JR 2154)
Meagan Zapotocky (MZ 8505)
110 East 59th Street
New York, New York 10022
(212) 909-9500
*Attorneys for Plaintiff*